ORDERED.

Dated: May 13, 2013




Eileen W. Hollowell, Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MARIANO J. RASO,<br><br>Debtor. | Chapter 13<br><br>Case No. 4:11-bk-32187-EWH |
| DARYL L. LEWIS,<br><br>Plaintiff/Counter Defendant,<br>v.<br><br>MARIANO J. RASO,<br><br>Defendant/Counter Claimant,<br><br>MICHAEL J. RUSING, State Bar No. 006617, PCC No. 50020, Individually and Jointly; and REBECCA K. O'BRIEN, State Bar No. 021954, PCC No. 65649, Individually and Jointly;<br><br>Cross Defendants. | Adv. Case No. 4:12-ap-00608-EWH<br><br>**MEMORANDUM CLARIFYING AND SUPPLEMENTING RULING MADE IN OPEN COURT ON FEBRUARY 11, 2013** |

## INTRODUCTION

Plaintiff seeks a denial of Debtor's discharge pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). The facts relate to a sale of Plaintiff's building ("Building"). Debtor acted as a real estate broker for the sale and earned a commission of $34,800 ("Commission")

when the Building was sold to a third party in a 1031 exchange (“1031 Exchange”).[1] Debtor’s agreement to act as Plaintiff’s broker was memorialized in a “Contract for Employment to Exchange or Sell Real Property” (“Employment Contract”). The Employment Contract included several references to a possible exchange transaction, as well as a sale, including:

> Tierra Realty & Investments (Debtor’s wholly-owned entity) agrees to use diligence in effecting an exchange or sale for its client.

The 1031 Exchange consisted of exchange of the Building for a lot in Nevada and a lot in California (“Lots”). The party accepting the Building assumed a $135,000 mortgage on the Building and paid $45,000 in cash.

The Exchange Escrow Instructions executed by the Plaintiff included the following language:

> All Parties to this agreement acknowledge that they have investigated the respective properties, and the Brokers, Title Company and Escrow Officer are hereby released from all responsibility regarding valuation and representation of condition (Plaintiff’s Trial Ex. E) (“Value Release”).

Simultaneously with the 1031 exchange of the Building, an entity wholly owned by Debtor bought the Lots from Plaintiff. As part of that transaction, Debtor submitted to Plaintiff a “Letter of Intent to Purchase Two Single Family Residential Building Lots” (“Letter of Intent’) (Trial Ex. O). The “Other Conditions” section of the Letter of Intent provided that Debtor’s entity “shall be allowed to market and obtain offers to buy, sell or exchange these lots immediately upon signing of this letter of intent.” The Transfer of Security section of the Letter of Intent provided that:

[1] Section 1031(a) of the Internal Revenue Code governs the recognition of gains or losses that arise as a result of a “like kind” exchange of real property.

> In the event of sale, exchange or trade, you agree to move the security on the property under the same terms and conditions as outlined in this Letter of Intent to Purchase as long as I am current on my payments.

Debtor's entity paid for the Lots by executing two promissory notes—one for $175,000, secured by a Deed of Trust on the California lot, and one for $80,000, secured by a Deed of Trust on the Nevada lot (collectively the "Notes"). The Notes were payable over twenty years at 6% interest, which would have resulted in Plaintiff receiving a total of $320,000 over the Notes' terms. Each of the Notes contained the following provision:

> Payee agrees to subordinate the lien in the event of a construction loan, trade or exchange requiring subordination to consummate the exchange on whatever property the payor enters into, provided payments are current (Trial Ex. S).

At the conclusion of a trial held on February 11, 2013, an oral decision ("Decision") was issued finding that the obligation on the Notes was discharged, but that the Commission was not.

Because the Record does not provide a complete explanation for the Decision, this Memorandum is issued to clarify and supplement the Decision.

A. <u>The Notes</u>

The Decision found that Plaintiff failed to meet his burden of proof under § 523(a)(2) or (6) with respect to claims based on non-payment of the Notes because Plaintiff failed to demonstrate that, at the time the Notes were executed, Debtor knowingly made a materially false representation regarding his intent to pay the Notes.

In applying § 523(a)(2)(A), courts in the Ninth Circuit employ a five-part test:

> (1) That the debtor made . . . representations;
>
> (2) That the debtor knew the representations were false when made;

(3) That the debtor made the representations with the intention and purpose of deceiving the creditor;

(4) That the creditor relied on such representations; and

(5) That the creditor sustained the alleged loss and damages as the proximate result of the misrepresentations having been made

In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1997). See also In re Gonzales, 2007 WL 7216267 (Bankr. S.D. Cal. Mar. 23, 2007).

The evidence indicated that the parties disagreed about how the Notes would be repaid. Debtor testified that he intended to pay the monthly obligations on the Notes only until such time as he could do a 1031 exchange on the Lots, after which he would sell or transfer the newly acquired property to Plaintiff in full satisfaction of the Notes. Debtor testified that Plaintiff was aware of Debtor's plan for repayment of the Notes. Plaintiff denied ever being told of Debtor's re-payment plan and testified that he expected the Notes to be paid by Debtor making regular monthly payments for their twelve-year term. Given that the terms of the Employment Agreement, Letter of Intent and the Notes all referred either to an exchange or sale of the Lots, Plaintiff's testimony that he believed that the sole manner the Notes would be paid was by Debtor over their twelve-year term is not credible.

For example, the Letter of Intent specifically stated that Debtor intended to immediately try to market or exchange the Lots (emphasis added). Plaintiff agreed that if that occurred, his security interest could be transferred to different (presumably income-producing) property. The Notes contain subordination language consistent with

the Letter of Intent. The evidence, therefore, demonstrates that Debtor did not “hide” from Plaintiff his intentions for repayment of the Notes.

Even if Plaintiff’s assertions about how he expected the Notes to be repaid were credible, the result would be the same. Debtor’s intention to repay the Notes in a different manner than Plaintiff expected is not evidence that at the time the Notes were executed, Debtor had no intention of ever paying the Notes. In order to prevail on a § 523(a)(2)(A) claim, a plaintiff must demonstrate that a representation was known to be false at the time it was made. In re Eashai, 87 F.3d 1082, 1086-87 (9th Cir. 1996).

Plaintiff argues that Debtor’s failure to make more than a few payments,[2] and only after repeated demands from Plaintiff, is further evidence that Debtor never intended to pay the Notes. However, Debtor credibly testified that the reason for non-payment of the Notes was that the real estate market went into a steep recession in 2008, which resulted in a deep decline in his income. Debtor further testified that the real estate bubble busting made it impossible for him to sell or exchange the Lots even though, when he signed the Notes, he intended to satisfy them.

Finally, Plaintiff argued that Debtor fraudulently misrepresented the value of the Lots and, therefore, that the difference between the value of the Lots and the amount of the Notes should be declared non-dischargeable. However, the Value Release precludes Plaintiff from establishing that he relied on any representations made by Debtor regarding the value of the Lots.

---

[2] There was conflicting evidence about whether one or two payments were made, but the number of payments would not change the analysis.

Plaintiff bears the burden of proof on all the elements of § 523(a)(2). In re Weinberg, 410 B.R. 19, 35 (9th Cir. BAP 2009). Plaintiff failed to meet that burden on his § 523(a)(2) claims with respect to the Notes and the valuation of the Lots.

Plaintiff also cannot prevail under § 523(a)(6) because the evidence did not demonstrate that Debtor subjectively intended to harm Plaintiff when the Notes were executed. As a result, Debtor's conduct does not satisfy the requirement of § 523(a)(6) that a debtor's conduct be willful. See In re Su, 290 F.3d 1140, 1146 (9th Cir. 2002) (subjective standard for willfulness correctly focuses on a debtor's state of mind…).

Plaintiff also argued that because Arizona law imposes a fiduciary duty on real estate brokers, a judgment should be entered in his favor under § 523(a)(4). The Decision held, as a matter of law, that statutorily created fiduciary duties of real estate agents are outside the scope of § 523(a)(4). See Honkanen v. Hopper, 446 B.R. 373 (9th Cir. BAP 2010).[3] For all of the above explained reasons, as well as the reasons set out in the Decision, Debtor's obligations under the Notes are dischargeable.

B. The Commission

The Decision held that the amount of the Commission is non-dischargeable, but did not explain why—other than finding that there was "some misrepresentation involved in terms of getting the deal to close." February 11, 2013, Transcript at 151. Further explanation of the facts and applicable law is required to explain why the Commission is non-dischargeable.

In addition to the Employment Agreement, Debtor and Plaintiff executed a Real Estate Agency Disclosure and Election Agreement (Agency Agreement, Exhibit 3). The Agency Agreement imposed on Debtor a duty to disclose all known facts which could

[3] Plaintiff was given additional time to brief the § 523(a)(4) issue but declined to do so.

materially and adversely affect the consideration to be paid by any party. This obligation was separate from Debtor's obligation to pay the Notes.

In violation of the Agency Agreement, Debtor failed to disclose the risks involved regarding his ability to satisfy the Notes through a future sale or exchange of the Lots. The evidence indicates that Debtor failed to disclose those risks because he wanted the 1031 Exchange of the Building to close so he could receive the Commission.

Debtor's failure to inform Plaintiff of facts which could materially affect the consideration Plaintiff would be paid was a material omission. Material omissions may constitute false representations under § 523(a)(2)(A). "[A] false representation can be established by an omission when there is a duty to disclose." Eashai, 87 F.3d at 1089. Here, the Agency Agreement imposed a duty on Debtor to disclose "facts which materially and adversely affect the consideration to be paid" to Plaintiff. Debtor's material omission was made for the purpose of deceiving the Plaintiff so the 1031 Exchange would close allowing the Debtor to receive the Commission. The evidence also demonstrated that Plaintiff justifiably relied on Debtor to comply with his obligation to disclose any facts which would materially and adversely affect the consideration Plaintiff was to receive.

Debtor argued that Plaintiff's reliance was not justifiable because Debtor repeatedly told Plaintiff he should hire lawyers or appraisers to assure that the 1031 Exchange of the Building would achieve the result Plaintiff wanted. In particular, Debtor pointed to language in the Agency Agreement which states:

> The Duties of the Broker in a Real Estate Transaction do not relieve the seller or the buyer from the responsibility to protect their own interests.

The justifiable reliance standard, however, is subjective. Even if further inquiry by Plaintiff would have informed him of the risks involved in the transaction, Plaintiff was not required to engage in such an inquiry. Field v. Mans, 516 U.S. 59, 70-71, 116 S. Ct. 437 (1995).

The final element which Plaintiff must prove under § 523(a)(2) is that he suffered loss as the proximate result of Debtor's misrepresentation. Here, Plaintiff suffered a loss equal to the amount of the Commission which was paid from the proceeds realized on the 1031 Exchange. But for Debtor's material omission, the Commission would not have been paid. As a result, Plaintiff is entitled to recover the amount of the Commission as a non-dischargeable debt.

## CONCLUSION

For the reasons explained in this Memorandum and set forth in the Decision, a non-dischargeable judgment of $34,800.00 will be entered this date in favor of Plaintiff. Interest will accrue at the federal judgment rate and each side is to bear his own costs and attorneys' fees.[4]

Dated and signed above.

Notice to be sent through the Bankruptcy
Noticing Center to the following:

Mariano J. Raso
4050 E. Hayhurst Lane #1
Tucson, AZ 85712

Michael J. Rusing
Rebecca K. O'Brien
Rusing Lopez & Lizardi, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, AZ 85718

---

4 Plaintiff was permitted to submit a memorandum regarding a right to claim attorneys' fees but did not do so.

Attorneys for Plaintiff/Counter Defendant Lewis